## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

NOT FOR PUBLICATION

| | | |
|---|---|---|
| NATASHA L. HARRIS-JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | No. 25-1380 |
| | ) | |
| v. | ) | Filed: October 7, 2025 |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff, Natasha L. Harris-Johnson, proceeding *pro se*, alleges that the Government's use of Plaintiff's federally trademarked name without Plaintiff's consent in court proceedings and other official contexts constitutes a Fifth Amendment taking and trademark infringement. Plaintiff's Updated Application to Proceed *In Forma Pauperis* ("Updated IFP Application") is currently pending before the Court. For the reasons explained below, the Court **GRANTS** Plaintiff's Updated IFP Application and **DISMISSES** Plaintiff's Amended Complaint.

### I.    BACKGROUND

In her Amended Complaint, Plaintiff alleges that the Government has used Plaintiff's incorporated and trademarked name "without her consent in court proceedings and other official contexts." Pl.'s Am. Compl. at 3, ECF No. 8. Plaintiff argues such usage constitutes a Fifth Amendment taking without just compensation as well as trademark infringement in violation of the Lanham Act. *Id.* at 2–4. While the Amended Complaint does not specifically identify which Government agencies used Plaintiff's name, or in which "official contexts" her name was used, Plaintiff's requested relief includes an "[i]njunction in court case 5:23CR38-BJB." *Id.* at 4. The Court assumes Plaintiff is referring to *United States v. Harris-Johnson*, No. 5:23-CR-38 (W.D.

Ky. Sept. 12, 2023), which appears to be a criminal matter currently pending against Plaintiff and scheduled to proceed to a jury trial beginning on November 17, 2025. *See* Mem. of Conference and Order, *United States v. Harris-Johnson*, No. 5:23-CR-38 (W.D. Ky. Aug. 22, 2025), ECF No. 58. In addition to the requested injunction, Plaintiff seeks what the Court construes as declaratory relief confirming that Plaintiff's "name, likeness, and intellectual property" constitute "religious and legal assets." ECF No. 8 at 4. Finally, Plaintiff requests "[j]ust compensation from amounts served on Invoice," including "[p]re and [p]ost judgment interest," and "costs of suits and any such other relief deemed just and proper." *Id.*

Plaintiff also filed an IFP Application. *See* ECF No. 2. On August 26, 2025, the Court entered an Order staying the case and denying without prejudice Plaintiff's first IFP Application due to incompleteness. *See* Order, ECF No. 6. The Court ordered Plaintiff to either pay the $405 filing fee or submit a revised IFP Application by September 25, 2025. *Id.* The following day, the Clerk notified the Court that Plaintiff had submitted three deficient filings: (1) "Complaint with Exhibits"; (2) "Application for *In Forma Pauperis*"; and (3) "Updated Application for *In Forma Pauperis*" attaching completed copies of two court forms and other exhibits. On September 12, 2025, the Court granted leave for Plaintiff to file her "Complaint with Exhibits" as an Amended Complaint, and it rejected both Plaintiff's "Application for *In Forma Pauperis*" and "Updated Application for *In Forma Pauperis*." *See* Order, ECF No. 7 (finding that the application was wholly duplicative of her first IFP Application and the updated application attached inaccurate court forms and duplicative exhibits). Consistent with that Order, on September 15, 2025, Plaintiff filed her Updated IFP Application without attachments. ECF No. 9.

## II.    LEGAL STANDARDS

### A.    IFP Applications

A court may waive the filing fees and allow a plaintiff to proceed IFP if he or she is "unable to pay such fees or give security therefor."  28 U.S.C. § 1915(a)(1).  Whether to allow a plaintiff to proceed IFP is left to the discretion of the court, based on information submitted by the plaintiff.  *Thompson v. United States*, 99 Fed. Cl. 21, 24 (2011).  Being "unable to pay such fees," as contemplated by § 1915(a)(1), "means that paying [the filing] fees would constitute a serious hardship on the plaintiff, not that such payment would render plaintiff destitute."  *Fiebelkorn v. United States*, 77 Fed. Cl. 59, 62 (2007) (recognizing that the burden of demonstrating an inability to pay is not a heavy one).

### B.    Dismissal Under 28 U.S.C. § 1915 for Failure to State a Claim or Frivolousness

A court "shall dismiss" the case of a plaintiff proceeding IFP "at any time if the court determines that . . . the action or appeal . . . is frivolous or malicious" or "fails to state a claim on which relief may be granted."  28 U.S.C. § 1915(e)(2)(B); *see, e.g.*, *Taylor v. United States*, No. 25-932, 2025 WL 1589283, at *2 (Fed. Cl. June 5, 2025) (dismissing plaintiff's case as frivolous and failing to state a claim); *Alvar v. United States*, No. 25-1131, 2025 WL 1951847, at *2 n.4 (Fed. Cl. July 16, 2025) ("[t]he frivolity of [p]laintiff's baseless claim . . . could also provide a separate ground for dismissal").  A complaint "is frivolous where it lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  To avoid dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the

defendant is liable for the misconduct alleged." *Pupols v. U.S. Pat. & Trademark Off.*, 413 F. App'x 232, 234 (Fed. Cir. 2011) (citing *Ashcroft*, 556 U.S. at 677–78).

### C.    Tucker Act Jurisdiction

"The Court of Federal Claims is a court of limited jurisdiction." *Marcum LLP v. United States*, 753 F.3d 1380, 1382 (Fed. Cir. 2014). The Tucker Act vests this Court with jurisdiction over any suit against the United States for money damages "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). "The Tucker Act, however, does not create 'substantive rights[,]'" nor does it grant jurisdiction for "every claim invoking the Constitution, a federal statute, or a regulation." *Me. Cmty. Health Options v. United States*, 590 U.S. 296, 322 (2020) (quoting *United States v. Navajo Nations*, 556 U.S. 287, 290 (2009) and then quoting *United States v. Mitchell*, 463 U.S. 206, 216 (1983)). Instead, to invoke jurisdiction under the Tucker Act, "a plaintiff must identify a separate source of substantive law that creates the right to money damages" from the United States. *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005). "[T]he court must address jurisdictional issues, even *sua sponte*, . . . whether raised by a party or not." *St. Bernard Par. Gov't v. United States*, 916 F.3d 987, 992–93 (Fed. Cir. 2019); R. 12(h)(3), Rules of the United States Court of Federal Claims ("RCFC").

Although filings by *pro se* litigants are liberally construed, a plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence. *Curry v. United States*, 787 F. App'x 720, 722 (Fed. Cir. 2019) (citing *Kelley v. Sec'y, U.S. Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987)). "[T]he leniency afforded to *pro se* litigants with respect to mere formalities does not relieve them of jurisdictional requirements." *Id.*

4

### III.    DISCUSSION

**A.        Plaintiff's Updated IFP Application is Granted.**

Plaintiff's Updated IFP Application meets the requirements of 28 U.S.C. § 1915(a)(1).  In her Updated IFP Application, Plaintiff states that she is currently unemployed, has no income, and is staying with family and friends.  ECF No. 9 at 1–2.  The Court finds that requiring Plaintiff to pay the filing fee would present considerable hardship.  *See Fiebelkorn*, 77 Fed. Cl. at 62.  The Court therefore grants Plaintiff's request to proceed IFP.

**B.        Plaintiff's Amended Complaint is Dismissed.**

Consistent with its duties under 28 U.S.C. § 1915(e)(2) and RCFC 12(h)(3), the Court has reviewed Plaintiff's Amended Complaint and determined that it must be dismissed as Plaintiff does not allege facts sufficient to state a valid claim within this Court's jurisdiction.  Specifically, Plaintiff's claim under the Takings Clause must be dismissed for failure to state a claim and frivolousness.  Plaintiff's remaining claim seeking damages for trademark infringement must be dismissed for lack of jurisdiction.

      1.        <u>Plaintiff's Claim under the Takings Clause is Dismissed for Failure to State a Claim and Frivolousness.</u>

Plaintiff's Amended Complaint asserts that the Government's use of her trademarked name "without consent in court proceedings and other official contexts . . . . amount[s] to a taking of Plaintiff's private property for public use without just compensation, in violation of the Fifth Amendment."  ECF No. 8 at 3.  The Takings Clause of the Fifth Amendment is money-mandating for purposes of Tucker Act jurisdiction.  *Moden v. United States*, 404 F.3d 1335, 1341 (Fed. Cir. 2005).  To the extent that Plaintiff's Amended Complaint seeks damages under the Takings Clause, this Court has jurisdiction.  But Plaintiff's allegation of a Fifth Amendment taking must nonetheless be dismissed for failure to state a claim and frivolousness.

"[A] compensable Fifth Amendment taking requires a showing that the Government has taken a legally protected property right." *Nw. La. Fish & Game Pres. Comm'n v. United States*, 574 F.3d 1386, 1390 (Fed. Cir. 2009) (citing *United States v. Willow River Power Co.*, 324 U.S. 499, 503 (1945)).  Thus, analysis of a Fifth Amendment taking involves both (1) "identif[ying] the private party's property interest," and (2) analyzing "whether that property has been deprived or abridged sufficiently to qualify as 'taken.'" *Id.* (citing *Members of Peanut Quota Holders Ass'n v. United States*, 421 F.3d 1323, 1330 (Fed. Cir. 2005)).  "Not all property interests are legally protected property rights." *Id.*  "Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" *Phillips v. Wash. Legal Found.*, 524 U.S. 156, 164, (1998) (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)); *see also Maritrans Inc. v. United States*, 342 F.3d 1344, 1352 (Fed. Cir. 2003) ("existing rules and understandings and background principles derived from an independent source, such as state, federal, or common law, define the dimensions of the requisite property rights for purposes of establishing a cognizable taking" (internal quotation marks omitted)).

The question of "whether a trademark is the type of private property protected by the Takings Clause" is "debatable and far from settled." *Clemente Props., Inc. v. Pierluisi Urrutia*, 693 F. Supp. 3d 215, 247 (D.P.R. 2023); *but see In re Int'l Flavors & Fragrances, Inc.*, 183 F.3d 1361, 1366 (Fed. Cir. 1999) (noting that "[t]he federal registration of a trademark does not create an exclusive property right in the mark").  Fortunately, the Court need not resolve the issue because the Amended Complaint does not concede that the Government's use of Plaintiff's trademarked

name was lawful and, in any event, does not allege interference with Plaintiff's trademark sufficient to constitute a taking.[1]

Even assuming a trademark was a property right protected under the Takings Clause, Plaintiff's Amended Complaint fails to state a Fifth Amendment taking because it alleges that the Government has used her trademarked name without authorization.  *See* ECF No. 8 at 3.  But a valid takings claim "must concede the validity of the government action which is the basis of the taking claim." *Tabb Lakes, Ltd. v. United States*, 10 F.3d 796, 802–03 (Fed. Cir. 1993); *see Moody v. United States*, 931 F.3d 1136, 1142 (Fed. Cir. 2019) ("A takings claim cannot be found on the theory that the United States has taken unlawful action.").  Thus, Plaintiff fails to state a legally cognizable takings claim because she has not conceded that the underlying government action at issue was authorized.  Indeed, Plaintiff simultaneously alleges that the Government's use of her

---

[1] Nevertheless, the three cases Plaintiff cites for the proposition that infringement or appropriation of intellectual property constitutes a Fifth Amendment taking do not support Plaintiff's assertion.  *See* ECF No. 8 at 1 (citing *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986 (1984); *Zoltek Corp. v. United States*, 442 F.3d 1345 (Fed. Cir. 2006); *Acceptance Ins. Cos. Inc. v. United States*, 583 F.3d 849 (Fed. Cir. 2009)).  *Zoltek* held that patent infringement by the Government does *not* give rise to a taking under the Fifth Amendment, *see* 442 F.3d at 1353, although that holding was vacated on rehearing en banc and the Court resolved the matter without reaching the Fifth Amendment issue, *see Zoltek Corp. v. United States*, 672 F.3d 1309, 1327 (Fed. Cir. 2012).  In *Acceptance Insurance*, the Federal Circuit held that the Government's decision declining to approve a proposed sale of crop insurance policies did *not* implicate a legally cognizable property interest to establish a Fifth Amendment taking.  583 F.3d at 858–59. *Ruckelshaus* comes the closest to supporting Plaintiff's theory in holding that a trade secret protected under state law constitutes a property right protected by the Takings Clause.  467 U.S. at 1003–04.  But a trade secret is different from a trademark; a trade secret is "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it," *Apple Inc. v. Samsung Elecs., Co.*, 727 F.3d 1214, 1222 (Fed. Cir. 2013) (quoting Restatement (First) of Torts § 757, cmt. b), whereas a trademark is used "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods . . . ." *In re Sones*, 590 F.3d 1282, 1284 (Fed. Cir. 2009) (quoting 15 U.S.C. § 1227).  Thus, Plaintiff has not cited, and the Court is not aware of, any authority holding that a trademark conveys a private property right protected by the Takings Clause.

name in court proceedings and other official contexts amounts to unlawful trademark infringement. *See* ECF No. 8 at 1.

Regardless of Plaintiff having not conceded the validity of the underlying Government action, Plaintiff's claim also fails for the independent reason that the Amended Complaint does not allege any deprivation or abridgement of her trademark sufficient to establish that such a right was "taken." The gravamen of Plaintiff's argument is that she is entitled to compensation for the Government's use of her name in court proceedings and other official contexts because Plaintiff registered her name as a trademark. *See id.* at 3. To determine whether deprivation or abridgement has occurred, the Court must look to federal trademark law as the "independent source" to "define the dimensions of the requisite property right[]." *Maritrans*, 342 F.3d at 1352. To establish that Government action interferes with a property right, a property owner generally must point to a "stick in their bundle of property rights that was removed by the" Government's action. *Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1312 (Fed. Cir. 2015). Federal trademark registration "does not create an exclusive property right in the mark." *In re Int'l Flavors & Fragrances*, 183 F.3d at 1366. As the Supreme Court has explained, the holder of a trademark does not have a "monopoly on the term" because "a competitor's use does not infringe a mark unless it is likely to confuse consumers." *U.S. Pat. & Trademark Off. v. Booking.com B.V.*, 591 U.S. 549, 562–63 (2020). Thus, under federal trademark law, the only property interest Plaintiff obtained in her registered trademark was the ability to prevent others from using the mark in a manner likely to confuse consumers. *See id.* at 562–63.

Here, Plaintiff's trademark is specifically registered within "Class 36," which includes "[f]inancial services, namely, operation and management of hedge funds, commodity pools and other collective investment vehicles, and trading for others of securities, options, futures,

derivatives, debt instruments and commodities," as well as "[m]anagement of securities portfolios." ECF No. 8 at 11. Thus, to allege a deprivation or abridgment sufficient to establish a taking, Plaintiff must allege that the Government's use of Plaintiff's name in court proceedings and other official contexts creates an impermissible risk of confusion for Plaintiff's consumers in the financial services industry. Such an allegation is facially implausible, and the Court cannot draw any reasonable inference that the Government is liable for a taking based on the alleged conduct. *See Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678. The Court strains to conceive of a hypothetical instance in which using a trademarked name in a court proceeding would create consumer confusion. Plaintiff's Amended Complaint thus fails to state a takings claim upon which relief can be granted.

Indeed, for the same reasons, Plaintiff's allegation that the Government's use of her name in connection with court proceedings and other official contexts amounts to a Fifth Amendment taking is frivolous, as it lacks an arguable basis in law. *Neitzke*, 490 U.S. at 325. As a policy matter, trademark law seeks to prohibit use of a mark that "deprives the owner of . . . goodwill" and "deprives consumers of their ability to distinguish among the goods of competing manufacturers." *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 854 n.14 (1982). Neither goal would be served by holding that the Government appropriates a trademark owner's rights by using the owner's mark in official contexts, including in legal actions. Rather, accepting Plaintiff's theory, liability for a taking would arise any time the Government filed a civil lawsuit or criminal prosecution against any entity or individual with a trademarked name. The available authority suggests that trademark law does not operate to require such an absurd conclusion.

Accordingly, the Court dismisses Plaintiff's claim under the Fifth Amendment's Takings Clause for failure to state a claim and as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B).

2.    Plaintiff's Claim of Trademark Infringement is Dismissed for Lack of Jurisdiction.

Plaintiff's remaining allegations appear to be seeking damages and equitable relief under the Lanham Act, over which the Court lacks jurisdiction.  Plaintiff cites several provisions of the Lanham Act, which provides remedies for trademark infringement and associated acts of unfair competition, throughout her Amended Complaint.  *See, e.g.*, ECF No. 8 at 1–2 (citing 15 U.S.C. §§ 1114, 1117(c), 1125).  Congress vested jurisdiction over claims arising under the Lanham Act in "district and territorial courts."  15 U.S.C. § 1121(a).  The Court of Federal Claims is not a district or territorial court, *Ledford v. United States*, 297 F.3d 1378, 1382 (Fed. Cir. 2002), and thus it lacks jurisdiction over claims under the Lanham Act.  *Proxtronics Dosimetry, LLC v. United States*, 128 Fed. Cl. 656, 672 (2016).

Finally, Plaintiff requests relief consisting of "[e]xplicitly acknowledging name, likeness, and intellectual property as religious and legal assets."  ECF No. 8 at 4.  The Court construes this as a request for declaratory relief.  Plaintiff also requests an "[i]njunction in court case 5:23CR38-BJB[.]"  *Id.*  The Court construes this as a request to enjoin further proceedings in *United States v. Harris-Johnson*, No. 5:23-CR-38 (W.D. Ky. Sept. 12, 2023), a currently pending federal criminal case against Plaintiff.  Neither form of relief is available.

This Court has no authority to grant equitable or declaratory relief absent "an express grant of jurisdiction from Congress."  *United States v. King*, 395 U.S. 1, 5 (1969).  Plaintiff has not pointed to, and the Court is not aware of, any express grant of jurisdiction that would allow it to render the declaratory and injunctive relief Plaintiff requests.  Congress has only authorized the Court to "grant declaratory and injunctive relief in bid protest cases in connection with government contracting pursuant to 28 U.S.C. § 1491(b)(2)," *Stephenson v. United States*, 58 Fed. Cl. 186, 193 (2003), and certain forms of injunctive relief in non-bid protest matters where it "is tied and

subordinate to a money judgment," *James v. Caldera*, 159 F.3d 573, 581 (Fed. Cir. 1998) (discussing 28 U.S.C. § 1491(a)(2)). Plaintiff's Amended Complaint does not assert a bid protest, nor is Plaintiff's request for injunctive relief collateral to a money judgment. Moreover, this Court "does not have jurisdiction to review the decisions of district courts," *Joshua v. United States*, 17 F.3d 378, 380 (Fed. Cir. 1994), and thus has no authority to enjoin district court actions. Accordingly, this Court could not issue the equitable relief Plaintiff requests, even if it had jurisdiction or Plaintiff otherwise stated a claim for relief.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Updated IFP Application (ECF No. 9) is **GRANTED**. Plaintiff's Amended Complaint (ECF No. 8) is **DISMISSED**. The Court **CERTIFIES** that any appeal from this decision would not be taken in good faith. *See* 28 U.S.C. § 1915(a)(3). The Clerk is directed to enter judgment accordingly.

**SO ORDERED**.

Dated: October 7, 2025                              */s/ Kathryn C. Davis*
                                                              KATHRYN C. DAVIS
                                                              Judge